1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JENNIFER KAY BIGBEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:11-CV-01190-KOB** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social,** | ) | |
| **Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I.  Introduction

On December 4, 2007, the claimant, Jennifer Kay Bigbee, applied for a period of disability and disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act. In both applications, the claimant alleged disability commencing on June 1, 2004. (R. 8). The claimant alleges disability because of low back pain, left foot pain, knee pain and migraines that occur once every three to four months. (R. 13). The Commissioner denied these claims initially on April 8, 2008. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on March 29, 2010. In a decision dated April 15, 2010, the ALJ found that the claimant was not disabled as defined by the Social Security Act and was, therefore, ineligible for a period of disability and disability insurance benefits and supplemental security income. (R.18-19). On February 3, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social

Security Administration. (R. 1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUE PRESENTED

The claimant presents the following issues for review: 1) whether the ALJ properly evaluated the claimant's credibility in applying the Eleventh Circuit's three-part pain standard; 2) whether the ALJ properly considered the combined effects of the claimant's impairments; and 3) whether the ALJ's hypothetical question to the vocational expert adequately described the claimant's impairments.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of the evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently employed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see* 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must evaluate whether the claimant provided "(1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that

condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Dyer v. Barnhart* (395 F.3d 1206, 1210) (11th Cir. 2005); 20 C.F.R. § 404.1529.

When the claimant proves that she has a medically determinable impairment that could reasonably be expected to produce her symptoms, the Commissioner must evaluate the intensity and persistence of her symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In evaluating the credibility of a claimant's statements regarding the intensity, persistence and limiting effects of her symptoms, the Commissioner may consider all objective and subjective evidence. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p, 1996 WL 374186 (July 2, 1996), 1-2. If the Commissioner decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

When making a determination on the credibility of a claimant's statements regarding pain, the Commissioner may consider a claimant's daily activities. *See* 20 C.F.R. 404.1529(c)(3)(I), 416.929(c)(3)(I); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). When evaluating the overall credibility of a claimant's statements, the Commissioner can consider observations recorded by agency personnel who previously interviewed the claimant. *See* SSR 96-7p, 1996 WL 374186 at *8. The Eleventh Circuit has determined that an ALJ may consider the claimant's appearance and demeanor when making credibility determinations, so long as the ALJ does not consider these factors "in lieu of a consideration of the medical evidence presented." *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985).

When a claimant has alleged multiple impairments, the Commissioner must evaluate whether the combined effects of the impairments render the claimant disabled. *See* 20 C.F.R. § 404.1522(b); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). A statement by the ALJ that "[the claimant] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment or *combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4," provides sufficient evidence to determine that the ALJ considered the combined effect of the claimant's impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (emphasis added); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

When a claimant proves that she is unable to perform her past relevant work, the burden shifts to the Commissioner to prove that the claimant could perform other work, given her age, education, prior work experience and residual functional capacity (RFC). *See* 20 C.F.R. § 404.1520(a)(4)(v); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The ALJ can meet this burden by asking the vocational expert (VE) a hypothetical question that encompasses all of the claimant's impairments that the ALJ finds supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The hypothetical question does not have to include findings that the ALJ has determined to be unsupported by the record. *See Carroll v. Soc. Sec. Admin., Com'r*, 453 F. App'x 889, 894 (11th Cir. 2011).  The ALJ does not have to include a list of medical conditions or specific diagnostic terms in the hypothetical question. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631-33 (6th Cir. 2004); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).

## V. FACTS

The claimant has a high school diploma and was thirty-two years old at the time of the administrative hearing. (R. 27, 30). Her past work experience includes employment as a cashier, stocker, fast food worker and school bus aide. (R. 17). The claimant originally alleged that she was unable to work as of June 1, 2004 because of lower back pain, left foot pain, knee pain and migraines that would occur once every three to four months. (R.13).

*Physical Limitations*

On April 5, 2005, Dr. Sharon Gray (claimant's primary care physician) treated the claimant at the Baptist Health Center-Gardendale for unstable hypertension and anemia. Dr. Gray prescribed Benicar. (R. 194).

On August 24, 2005, the claimant complained of a migraine at the Baptist Health Center-Gardendale. Dr. Gray prescribed the claimant Imitrex. (R. 189).

On July 12, 2006, the claimant returned to Dr. Gray complaining of migraines. Dr. Gray treated her with a Nubain shot. The claimant also had a breast abscess. (R. 185).

On January 5, 2007, Dr. Gray treated the claimant for lower back pain. The claimant had taken Tylenol prior to the visit, but the drug did not alleviate her pain. Dr. Gray prescribed Flexeril and Lortabs. (R. 183).

On January 19, 2007, the claimant visited Dr. Gray with claims of back pain. The claimant stated that the Flexeril helped alleviate her pain somewhat. Dr. Gray gave her an injection for the pain, but the record is unclear as to the type of injection given. (R. 182).

On May 29, 2007, the claimant returned to Dr. Gray with claims of back pain. The claimant again stated that the Flexeril helped somewhat to alleviate her pain. Dr. Gray gave her

an injection for her pain, but the record is unclear as to the type of the injection given. Dr. Gray also prescribed Glucophage for diabetes. (R. 181).

On December 28, 2007, Mr. A. Miller interviewed the claimant and filed a Disability Report from a Social Security Administration Field Office.[1] Mr. Miller found that the claimant had no visible physical limitations. (R. 132).

On February 11, 2008, Dr. Lang Quang Huynh performed a consultative examination of the claimant at the request of the Disability Determination Service. Dr. Huynh's examination revealed normal reports for her HEENT,[2] cardiorespiratory, gastrointestinal and genitourinary systems. The claimant weighed 350 pounds and was five feet, seven inches tall. Dr. Huynh noted that the claimant walked normally in the exam room, appeared very stable, and had a normal range of motion, gait and station. The examination revealed that the claimant's motor strength in her upper and lower extremities, grip strength, seated leg raise, muscle tone, and fine and gross manipulation were all normal. The claimant had no atrophy and displayed normal motor coordination. She could not squat due to her obesity and reported that a heel to toe walk was uncomfortable due to back pain. Dr. Huynh's final assessment reported that claimant had low back pain, diabetes type II, hypertension and obesity with weight being more than 350 pounds. (R. 221-25).

On March 11, 2008, Dr. Bruce W. Romeo, an examining consultant, performed an x-ray of the claimant's lumbosacral spine at the request of the Disability Determination Service. The procedure revealed no fracture or subluxation and a normal vertebral body alignment. Dr. Romeo

---

[1]The record does not include Mr. Miller's full first name.

[2]Head, eyes, ears, nose and throat

found mild disk space narrowing at L5-S1. He noted that the remaining disk spaces appeared well-preserved and the facet joints appeared normal. (R. 227).

On July 15, 2008, Dr. Gray examined the claimant after she complained of sharp pain in her right side. The patient weighed 374 pounds on this date. Ultrasound testing and a CT scan revealed that claimant had a large pelvic mass. (R. 310-14). Dr. Gray referred the claimant to Dr. J. Maxwell Austin, Jr. at the Division of Gynecologic Oncology at the University of Alabama at Birmingham. Dr. Austin examined the claimant on July 29, 2008. He recommended an exploratory laparotomy. (R. 285).

On August 6, 2008, Dr. Austin performed an exploratory laparotomy and bilateral salpingo-oophorectomy of the claimant at Brookwood Medical Center. The procedure treated numerous cysts on her right and left ovaries. (R.262-63). Dr. Austin drained almost 2,500 mL of a dark brown fluid consistent with an old endometrioma from a cyst. During and after the procedure, Dr. Austin managed the claimant's diabetes and hypertension. (R. 257). Pathology reports indicated that the claimant had bilateral serous cystadenofibromas, focal endometrioma, ovarian stromal edema and a mural nodule with atypically proliferative serous tumor. (R. 265).

On August 25, 2008, Dr. Austin reported that the claimant was healing well except for a superficial wound seroma and hot flashes. On this date, the claimant weighed 384 pounds. (R. 279). On December 1, 2008, the claimant returned to UAB for a follow-up visit with Dr. Austin. The doctor reported that the claimant was healing well and referred her to Dr. Gray, her treating physician. No medical record exists stating that the claimant suffered from a hernia at any time. (R. 275-76).

On January 13, 2009, Dr. Gray examined the claimant after she complained of left foot

pain. Dr. Sandra Martin examined the claimant and reported soft tissue swelling in the foot, but no fracture, subluxation or other acute osseous abnormality. (R. 305-06).

On March 30, 2009, Dr. Gray treated the claimant for back pain and prescribed Flexeril. He treated the claimant for back pain again on July 2, 2009. (R. 301, 299).

On October 15, 2009, Dr. Gray treated the claimant for foot pain. The claimant stated that the pain felt like "standing in ants." Dr. Gray mentioned neuropathy in the report but did not make a clear diagnosis of neuropathy. (R. 295).

On February 9, 2010, Dr. H. Frank Thomas performed an EMG and nerve conduction study on claimant's foot at the request of Dr. Gray. The claimant had difficulty tolerating the procedure, resulting in a "limited study." The results of the study provided evidence compatible with a mild neuropathy. However, Dr. Thomas was unable to determine whether this evidence resulted from actual nerve slowing or from technical issues, as the claimant failed to tolerate the entire procedure. Dr. Thomas stated that the study required "further clinical correlation" of the test results and the possible neuropathy. (R. 288).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for a period of disability, disability insurance benefits and supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 8). At the hearing, the claimant first testified that her lower back pain prevented her from working. She testified that her lower back had most recently "gone out" in January 2010, when she bent over to pick up her nephew. To treat her pain after this incident, she testified that she took Lortab. The claimant indicated that when her back went out, she would have pain for one week. She testified that while her back was out, she would stay off her feet in

bed, as the pain prevented her from standing and walking. (R. 34-36). The claimant testified that her back gave her pain if she sat for more than thirty to forty-five minutes. (R. 39).

The claimant testified that she has migraines once every three to four months. She testified that the migraines would last up to a week. The claimant testified that when she had a migraine, she would treat the migraine by taking Tylenol and staying in a dark room. (R. 36).

The claimant testified that she had a burning pain in her feet that prevents her from standing for more than thirty minutes. She testified that the pain feels like "standing in a bed of fire." The claimant testified that the pain in her feet also inhibits her ability to walk. (R. 34-37).

The claimant testified that she also had pain in her knee. She testified that her knee "wants to pop out of place." The claimant also testified that she had swelling in her left foot and both hands. (R. 38-39).

The claimant testified that she had a tumor removed that weighed fifty pounds, referring to the procedure performed by Dr. Austin on August 6, 2008. She testified that the tumor caused a hernia to develop in her stomach. As a result of this hernia, the claimant testified that her physician instructed her not to pick up anything that weighed more than ten pounds. (R.39).

Dr. James Anderson testified as a medical expert at the request of the ALJ. Dr. Anderson did not examine the claimant, but he reviewed the entire medical record. The doctor testified that the claimant was morbidly obese and had metabolic syndrome, hypertension, and obesity-related diabetes. He testified that she also had mild disc disease at L5-S1, bilateral foot pain, mild peripheral enteropathy, and chronic abdominal pain with endometriosis and polycystic ovaries. Dr. Anderson described her pain syndrome as intermittent and mild to moderate in nature. (R. 40).

Dr. Anderson testified that the medical record contained no mention of an abdominal hernia. He also testified that no record indicated that the claimant's physician instructed her not to pick up anything weighing more than ten pounds. Dr. Anderson testified that if a physician had given such an instruction, it would not apply for more than one month after the operation. (R. 41).

Dr. Anderson further testified that as of June 30, 2005, the date that the claimant was last insured for a Title II claim, the claimant had no work-related limitations. He testified that as of June 30, 2005, the claimant would have been able to perform the full range of light work activity. Dr. Anderson testified that on the date of the ALJ hearing, the claimant was able to perform light work that afforded a sit/stand option. (R. 41).

James Hare, the VE, testified concerning the type and availability of jobs that the claimant was able to perform. He testified that the claimant's previous work as a cashier had a medium exertion level and was unskilled. Mr. Hare testified that her previous work as a stocker had a light exertion level and was unskilled. He testified that her previous work as a school bus aide had a medium exertion level and was unskilled. Mr. Hare testified that the claimant had no skills transferable to other work. (R. 42-45).

The ALJ asked Mr. Hare to assume that the claimant was capable of performing work at the light exertion level which afforded a sit/stand option and was limited to non-complex job tasks. Mr. Hare testified that in this situation, the claimant would be able to work as a cafeteria cashier, a ticket taker or an information clerk. He testified that these jobs had a light exertion level, provided a sit/stand option and were unskilled. Mr. Hare testified that these jobs would not allow the claimant to lie down while working if she had swelling in her hands or feet. (R. 43-45).

The ALJ asked Mr. Hare to assume that the claimant's testimony was credible and supported by the record as a whole. Mr. Hare testified that the claimant would not be able to perform any of the work he had previously identified. He testified that the average level of pain would be moderately severe, between a level of seven and nine, and that this level would preclude work. Mr. Hare also testified that the claimant's migraines would result in a rate of absenteeism high enough to get the claimant fired, as the migraines would last a week and occur every three to four months. He testified that the jobs previously mentioned would not tolerate a level of absenteeism of more than two days per month. (R. 45).

*The ALJ's Decision*

On April 15, 2010, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 18). First, the ALJ found that the claimant met the insured status requirements of the Social Security Act through June 30, 2005. Next, the ALJ found that the claimant had not engaged in substantial gainful activity since June 1, 2004, the alleged onset date of her disability. The ALJ then found that the claimant's morbid obesity, hypertension, obesity related diabetes, mild degenerative disc disease of the lower spine, mild peripheral neuropathy, endometriosis and polycystic ovary disease qualified as severe impairments. The ALJ concluded that these impairments did not singly or in combination meet or medically equal one of the Listed Impairments. (R. 10, 12).

The ALJ next considered the claimant's subjective allegations of pain to determine whether she had the residual functional capacity to perform work. The ALJ found that the claimant had the residual functional capacity to perform light work that affords a sit/stand option and is limited to noncomplex job tasks. The ALJ determined that "the claimant's medically

determinable impairments could reasonably be expected to cause the alleged symptoms," but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (R. 12-13).

In reaching his conclusion, the ALJ gave considerable weight to the treating physicians at Baptist Health Center-Gardendale, including Dr. Gray, as they "examined the claimant on a frequent and regular basis." The ALJ also gave considerable weight to the examining consultant, Dr. Huynh, as he examined the claimant and his opinions are consistent with the medical evidence of record. Finally, the ALJ gave great weight to the testimony of Dr. Anderson, as he "had access to the medical evidence of record, heard the testimony of the claimant, and is an impartial medical expert." (R. 16-17).

The ALJ found that although the claimant's alleged onset of disability was June 1, 2004, no medical evidence of any medically determinable illness existed prior to this date or immediately thereafter. On April 5, 2005, the earliest date in the medical record, the claimant received treatment for hypertension and anemia and made no mention of being unable to work or being disabled. (R. 14).

The ALJ first examined the claimant's alleged back pain. He concluded that the claimant's medical records did not support her statements about the intensity, persistence and limiting effects of her back pain. The ALJ noted that no treating physician ever stated that the claimant was disabled due to back pain. The ALJ found that the claimant had no medical evidence of back pain until January 5, 2007. The claimant complained of back pain again on January 19, 2007, and May 29, 2007. Almost two years passed before the claimant complained of

back pain again on March 30, 2009. The ALJ referred to the reports of Dr. Huynh and Dr. Romeo, the physicians who provided consultive examinations. The ALJ concluded that these examinations found only mild degenerative disk disease at L5-S1 and that these findings did not support the level of pain alleged by the claimant. (R. 13-14).

The ALJ concluded that the claimant's medical records did not support her statements as to the extent of the effects of her migraines. The ALJ noted that the claimant only received prescription medication for migraines on August 24, 2005 and July 12, 2006. The ALJ found that the claimant made no other mention of migraines to her treating physicians and that the claimant did not even mention migraines to Dr. Huynh during her consultative examination. (R. 14).

The ALJ next concluded that the claimant's alleged endometriosis and polycystic ovary disease did not support a finding of disability, as the claimant fully recovered from these ailments after the procedure by Dr. Austin. The ALJ noted that the claimant first experienced this pain in July 2008 and that she fully recovered from a successful procedure one month later. *Id.*

The ALJ found that the claimant's medical records did not support her statements about the limiting effects of her hypertension. The ALJ noted that no record exists of the claimant having difficulty keeping her hypertension under control and at no time did a treating physician place any limitations or restrictions on the claimant as a result of the hypertension. *Id.*

The ALJ next examined the claimant's alleged foot pain. He concluded that the claimant's medical records did not support her statements about the intensity, persistence and limiting effects of her foot pain. He noted that although the claimant had soft tissue swelling, her foot was not fractured. The ALJ determined that the nerve conduction test was inconclusive and that the record contains no evidence that a doctor diagnosed the claimant with neuropathy. (R.

15).

The ALJ found that the claimant's alleged knee pain, obesity, and obesity-related diabetes mellitus did not support the conclusion that she had a disability. First, he noted that no medical record of knee pain exists. The ALJ observed that the medical record did not contain any reference to any disabling impairments as a result of the diagnosis of diabetes mellitus. He analyzed the claimant's obesity in accordance with SSR 02-1p. The ALJ noted that Dr. Huynh's consultative examination showed that the claimant had normal movement and range of motion in virtually every area, except for her inability to squat. The ALJ concluded that her obesity did not "significantly interfere with her ability to perform physical activities or routine movement consistent with the exertional requirements of the [stated] residual functional capacity." (R. 15-16).

The ALJ also discredited the claimant's testimony due to inconsistencies between her testimony and the medical record regarding Dr. Austin's procedure on August 6, 2008. The ALJ noted that although the claimant testified that she had a tumor removed that weighed fifty pounds, the medical record did not indicate a corresponding decrease in the patient's weight. The ALJ also observed that the medical record contradicts the claimant's testimony that the tumor gave her a hernia, as no medical record of a hernia exists. (R. 14). Finally, the ALJ found that Dr. Anderson's testimony contradicted the claimant's statement that she could not lift more than ten pounds due to a hernia. Dr. Anderson testified that if the claimant did have a hernia, any restrictions on her activities would not last more than one month. (R. 17).

In support of his decision to discredit the claimant's testimony, the ALJ noted that the claimant performed household chores, including cooking, vacuuming, doing the laundry and

changing the beds. The ALJ mentioned the claimant's testimony that her parents depend on her to take them to the doctor and get their medicine for the week and that the claimant can drive for up to an hour before getting sharp pain in her back and left leg. Additionally, the ALJ referenced Mr. Miller's finding that the claimant had no visible physical limitations. (R. 15).

The ALJ determined that the claimant was unable to perform any past relevant work, as none of her previous work would satisfy the conditions of the residual functional capacity of light work with limitations of a sit/stand option and noncomplex job tasks. The ALJ considered the claimant's age, education, work experience and residual functional capacity and determined that jobs existed in significant numbers in the national economy that the claimant could perform. The ALJ noted that Mr. Hare testified that the claimant would be able to find work as a cafeteria person, a ticket taker, or an information clerk. Based on these findings, the ALJ concluded that the claimant retained the capacity for work that exists in significant numbers in the national economy and, therefore, was not disabled under the Social Security Act. (R.17-18).

## VI. DISCUSSION

### I. Whether the ALJ properly evaluated the claimant's credibility in applying the Eleventh Circuit's three-part pain standard.

The claimant argues that the ALJ improperly evaluated the claimant's credibility in applying the Eleventh Circuit's three-part pain standard. This court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision. The three-part pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain. *Holt*, 921 F.2d at 1223. The standard requires the Commissioner to evaluate whether the claimant has provided "(1) evidence of an underlying medical condition and *either*

(2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (emphasis added).

When the claimant proves that she has a medically determinable impairment that could reasonably be expected to produce her symptoms, the Commissioner must evaluate the intensity and persistence of her symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The Commissioner may consider all objective and subjective evidence when evaluating the credibility of a claimant's statements regarding the intensity, persistence and limiting effects of her symptoms. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p, 1996 WL 374186 (July 2, 1996), 1-2. If the ALJ decides to discredit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *See Brown*, 921 F.2d at 1236. If the ALJ fails to articulate the reasons for discrediting the claimant's subjective complaints of pain, the claimant's testimony must be accepted as true. *Id.*

In this case, the ALJ conceded that the claimant's underlying medically determinable impairments could be capable of generating the level of pain that the claimant has alleged. However, the ALJ found that the entirety of the medical evidence failed to support the claimant's statements concerning the alleged intensity, persistence and limiting effects of the pain to the extent that they were inconsistent with the residual functional capacity assessment.

The ALJ explicitly articulated his reasons for discrediting the claimant's alleged intensity, persistence and limiting effects of pain. The ALJ found that the objective medical evidence did not indicate that the claimant's impairments were disabling. Additionally, the ALJ properly

considered the claimant's daily life activities, the observations of Mr. Miller, the Field Office agent who interviewed the claimant, and the inconsistencies between the claimant's testimony and the medical record of evidence.

First, the ALJ properly noted that the medical record lacked objective findings to support the claimant's testimony as to the extent of the limitations of her impairments. He determined that the claimant's alleged back pain was not severe enough to conclude that the claimant had a disability. The ALJ referenced Dr. Gray's medical records to show that the claimant only received treatment for back pain three times, and referenced Dr. Huynh's and Dr. Romeo's consultative examination records that found only mild degenerative disk disease at the L5-S1. The ALJ also determined that the claimant's alleged migraines were not severe enough to support a disability diagnosis. He noted that the medical record showed that the claimant only received prescription treatment for migraines twice and that she never mentioned the migraines to Dr. Huynh during the consultative examination.

The ALJ determined that the claimant's alleged endometriosis and polycystic ovary disease, knee pain and foot pain did not demonstrate that the claimant had a disability, as the record indicated that the treatment was successful and the claimant recovered fully. The ALJ noted that the claimant had recovered fully from successful treatment for her endometriosis and polycystic ovary disease. He found that no medical record of knee pain existed. The ALJ did not believe that the claimant's foot pain was as severe as she alleged, as the x-ray revealed only soft tissue swelling and the nerve conduction test yielded inconclusive results.

In addition to evaluating the lack of objective findings in the medical record, the ALJ properly considered the claimant's daily life activities. The ALJ considered the claimant's

testimony that she regularly performed household chores, took her parents to the doctor and drove for up to one hour without pain. The ALJ reasoned that the claimant would not be able to perform these activities if her impairments were as severe as she claimed. The claimant argues that the ALJ's decision placed an undue emphasis on the claimant's daily activities. However, the regulations and case law in the Eleventh Circuit specifically permit an ALJ to consider a claimant's activities of daily living when evaluating pain and subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); *Macia*, 829 F.2d at 1012.

The ALJ also considered the observations of Mr. Miller, the Agency employee who interviewed the claimant and filed the field disability report on December 28, 2007. Mr. Miller observed that the claimant lacked any visible physical limitations. The claimant argues that the ALJ erred in considering this information. However, agency regulations and Eleventh Circuit case law support the ALJ's consideration of this information. When evaluating the credibility of a claimant's statements, the ALJ may consider observations recorded by agency personnel who previously interviewed the claimant. *See* SSR 96-7p, 1996 WL 374186 at *8. The Eleventh Circuit has determined that an ALJ may consider the claimant's appearance and demeanor when making credibility determinations, so long as the ALJ does not make his decision based on these factors "in lieu of a consideration of the medical evidence presented." *Norris*, 760 F.2d at 1158.

The ALJ also appropriately considered inconsistencies between the claimant's testimony and the medical record. The ALJ properly concluded that the medical record contradicted the claimant's allegation that she had a fifty pound tumor removed. Dr. Austin made no reference to such a tumor, and the medical record revealed that the claimant weighed 374 pounds shortly before the surgery and weighed 384 pounds shortly after the surgery, making removal of tumor of

this size unlikely.

Also, the ALJ properly concluded that the medical record contradicted the claimant's allegation that a tumor caused a hernia to develop in her stomach. The ALJ found that the medical record contained no record that the claimant ever had a hernia. Finally, the ALJ properly concluded that Dr. Anderson's testimony contradicted the claimant's allegation that she could not lift more than ten pounds due to a hernia. Dr. Anderson testified that any limitation on the claimant's ability to lift objects would not last for more than one month.

Based on the explicit findings of the ALJ, this court concludes that he properly applied the Eleventh Circuit's three-part pain standard and that substantial evidence supports the ALJ's decision to discredit the claimant's testimony regarding the intensity, persistence and limiting effects of her pain.

### II. Whether the ALJ properly considered the combined effects of the claimant's impairments.

The claimant also argues that the ALJ failed to properly consider the combined effects of the claimant's impairments. This court finds that the ALJ properly considered the combined effects of her impairments and that substantial evidence supports his decision.

When a claimant has alleged multiple impairments, the Commissioner must evaluate whether the combined effects of the impairments render the claimant disabled. *See* 20 C.F.R. § 404.1522(b); *Hudson*, 755 F.2d at 785. The ALJ can meet this burden by stating that the claimant did not have an impairment or "combination of impairments" that meet or medically equal one of the Listed Impairments. *See Wilson*, 284 F.3d at 1224-25; *Jones*, 941 F.2d at 1533.

In this case, the ALJ determined that the claimant did not have "an impairment or

*combination of impairments* that meets or medically equals" one of the Listed Impairments. (R. 12) (emphasis added). This statement provides sufficient evidence to determine that the ALJ considered the combined effect of the claimant's impairments. *See Wilson*, 284 F.3d at 1224-25; *Jones*, 941 F.2d at 1533. In addition, the ALJ asked Dr. Anderson at the hearing whether "[c]onsidering the claimant's impairments *in combination* would . . . produce work related limitations." (R. 41) (emphasis added). The ALJ gave great weight to Dr. Anderson's response that the claimant could perform light work with a sit/stand option, ultimately finding that the claimant had the residual functional capacity to perform light work that allowed for a sit/stand option and required only noncomplex job tasks.

Based on these statements by the ALJ, this court concludes that the ALJ properly considered the combined effects of the claimant's impairments.

### III. Whether the ALJ's hypothetical question to the VE adequately described the claimant's impairments.

The claimant argues that the ALJ erred by failing to pose a hypothetical question to the VE that adequately described the claimant's impairments. This court finds that the ALJ committed no error, as he properly asked a hypothetical question that encompassed all of the claimant's impairments that were supported by substantial evidence.

If a claimant proves that she is unable to perform her past relevant work, the burden shifts to the Commissioner to prove that other work exists that the claimant could perform, given her age, education, prior work experience and residual functional capacity (RFC). *See* 20 C.F.R. § 404.1520(a)(4)(v); *Doughty*, 245 F.3d at 1278. The ALJ can meet this burden by asking the VE a hypothetical question that encompasses all of the claimant's impairments that are supported by

substantial evidence. *See Rollins*, 261 F.3d at 857; *Jones*, 190 F.3d at 1229. The hypothetical question does not have to include findings that the ALJ has determined to be unsupported by the record. *See Carroll*, 453 F. App'x at 894. The ALJ's question does not have to include specific medical information about the claimant's alleged impairments. *See Webb*, 368 F.3d at 631-33; *Warburton* 188 F.3d at 1050.

In this case, the claimant proved that she was unable to perform her past relevant work. The ALJ found that she had a residual functional capacity of light work with limitations of a sit/stand option and noncomplex job tasks. None of the claimant's previous jobs would satisfy this RFC. Therefore, the ALJ had the burden to prove that other work exists that the claimant could perform. The ALJ satisfied this burden by asking the VE whether the claimant would be able to find work if the ALJ determined that the claimant was "capable of performing work at the light level of exertion," limited to "a sit/stand option . . . [and] non-complex job tasks." (R. 43-44). The VE responded that the claimant would be able to find work with these limitations as a cafeteria cashier, ticket taker or information clerk.

The claimant argues that the ALJ erred by failing to ask the VE to consider each of the claimant's alleged impairments. However, the ALJ had no obligation to include findings in his hypothetical question that he found unsupported by the record. *See Rollins*, 261 F.3d at 857 (finding that the ALJ did not have to include in his hypothetical question limitations that he did not find credible); *Carroll*, 453 F. App'x at 894 (holding that the ALJ did not have to include findings in his hypothetical question that the record did not support). In this case, the ALJ's question adequately portrayed the limitations that he found to be supported by substantial evidence.

The claimant also argues that the ALJ erred in failing to include diagnostic information about each of the claimant's alleged medical conditions. This argument misinterprets the role of the VE, who is not a medical expert. Under 20 C.F.R. § 416.920(a)(4)(v), the ALJ must assess the residual functional capacity of the claimant to determine whether she "can make an adjustment to other work." When the ALJ uses the testimony of a VE to make this assessment, the ALJ's hypothetical question does not have to include specific medical information about the claimant's alleged impairments. *See Webb*, 368 F.3d at 631-33; *Warburton*, 188 F.3d at 1050. Instead, the ALJ should adequately portray the limitations of the claimant by including the claimant's RFC in his question to the VE, rather than including diagnostic medical information. In this case, the ALJ asked the VE to give his opinion based on the determined RFC and properly included a description of his assessment of the claimant's limitations. The ALJ, therefore, did not err by failing to include specific medical information about the claimant's alleged impairments in his hypothetical question to the VE.

This court concludes that the ALJ posed a hypothetical question to the VE that properly described the claimant's impairments and that substantial evidence supports the ALJ's decision. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 19th day of June, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE